UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

DR. ARIF S. IZMIRLIGIL,

PLAINTIFF,

– against –

SELECT PORTFOLIO SERVICING, INC.,

DEFENDANT,

--------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 11 2018 ★

LONG ISLAND OFFICE

Civil Action No:

Jury Trial Demanded

CV18 7043

SUPPLEMENTAL VERIFIED
**COMPLAINT**

BIANCO, J.
SHIELDS, M.J.

Plaintiff Dr. ARIF S. IZMIRLIGIL (hereinafter referred to as "Plaintiff" or "Izmirligil"),

acting as pro se, sets forth the following upon information and belief as and for his Supplemental

Verified Complaint ("Supplemental Complaint"), against Defendant SELECT PORTFOLIO

SERVICING, INC., (hereinafter referred as "SPS" or "Defendant").

### NATURE OF THE ACTION

1.  Plaintiff's instant action stems from another of his action's bearing the Civil Action No:

2:17-cv-06157(JFB)(AYS), Dr. Arif Izmirligil v. Select Portfolio Servicing, Inc., et al, in the

same District Court, EDNY where District Judge Joseph F. Bianco denied the defendants' motion

to dismiss on September 7, 2018 (DOC: No: 27), and every claim of Izmirligil's against the

Defendant SPS and other Defendants, among others, including but not limited to the RICO

claim, RICO conspiracy claim, and Breach of Contract claim, etc., are survived, also by directing

that "It is further ordered that Plaintiff will be given an opportunity to file a motion to amend...."

Since, Defendant SPS engaged in actionable conduct after commencement of the Izmirligil's

earlier litigation, and Izmirligil may seek leave to file supplemental pleading [under Rule 15(c)

of FRCP] to assert additional claims based on the subsequent conducts of the Defendant SPS, but

1

RECEIVED
DEC 11 2018
EDNY PRO SE OFFICE

Plaintiff Izmirligil is not required to do so; Instead, he elected to bring this instant action

("subsequent action") involves claims over ongoing conduct and it relies on facts that occurred

both before and after the earlier action commenced in violation of the Real Estate Settlement

Procedures Act 12 U.S.C §2601 et seq. ("RESPA"); 12 CFR 1024 et ("Regulation-X"); Fair Debt

Collection Practices Act, 15 U.S.C §1692 et seq ("FDCPA") committed by Defendant SPS, and

under New York State Law, an accounting, seeking actual and compensatory damages, punitive

damages, costs, and attorney's fees against the Defendant SPS, where the Plaintiff's subsequent

action will be consolidated pursuant to Local Rule 50.3.1(e), stated in its interim that:

**Assignment of Related Cases**...in the interest of Judicial economy, the following categories of

civil cases shall be deemed to be "related" without further Order of the Court...(2) all pro se civil

actions filed by the same individual...where, as here, Plaintiff Izmirligil is currently acting, as

"pro se" in both actions. [See Local Rule 50.3.1(e)(2)].

2.   Plaintiff Izmirligil is a natural person residing in the State of New York, County of

Suffolk, who is the owner of the residential property located at 15 Sailors Court, Miller Place,

New York 11764, that is the subject of the instant action.

3.   Defendant SPS is a Utah Corporation and a residential loan servicing company with

offices in Jacksonville, Florida, and Salt Lake City, Utah. SPS is the former Fairbanks Capital

Corporation, which changed its name to Select Portfolio Servicing, Inc in June 2004, and

regularly conducts business in the State of New York and throughout the United States. SPS is

currently the subservicer of the Bank of New York Mellon f/k/a The Bank of New York, as

Trustee for CMFT 2006-S2 Series, and has been acting as such since November 1, 2013.

4.   Defendant SPS's headquarters is located at 3217 S. Decker Lake Drive, Salt Lake City,

2

Utah 84119, and as of March 31, 2016, SPS serviced more than 400,000 loans nationwide. SPS

enters into service agreements with lenders and note holders pursuant to which SPS provides

servicing activities for loan portfolios. SPS represents in standard forum letters to borrowers that

"[a]s the mortgage servicer, SPS is authorized to collect all payments and administer the terms of

the note and security instrument", and further SPS mails standard form mortgage statements and

notice letters to the mortgagors, routinely, every month, including Plaintiff Izmirligil.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction under 15 U.S.C §1692 k (FDCPA), 12 U.S.C §2614 (RESPA),

28 U.S.C §1321 and 28 U.S.C §1331 and 28 U.S.C §1337. The Court has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C §1367.

6.   Venue is proper in this forum pursuant to 28 U.S.C §1391, because, all acts upon which

the claims are based occurred within this District, and Defendant SPS does or transacts business

within this District.

## FACTUAL ALLEGATIONS

A-  **Defendant SPS is a "Serial RESPA Violator", and SPS was already permanently
    restrained, and enjoined from violating RESPA based on US v. SPS, Inc. 2007 US Dist.
    LEXIS 104230, at 9(D. Mass, Sept. 6, 2007) in which is identical to the Plaintiff
    Izmirligil's RESPA and Regulation-X claims in this instant action:**

7.   RESPA imposes certain obligations on mortgage servicers to provide information to

borrowers regarding their mortgage loans. 12 U.S.C §2605. Additionally, in 2013, the Bureau of

Consumer Financial Protection ("CFPB") enacted new regulations implementing specific

provisions under RESPA ("RESPA") and the Dodd-Frank Act concerning mortgage loan

servicers including, but not limited to, certain requirements for responding to a written request

("QWR") for information concerning a borrower's mortgage loan. See 12 C.F.R §1024.36 et seq.;

3

Public Law 111-203, 124 Stat. 1376 (2010) ("Regulation-X"). RESPA and its implementing

regulations should be broadly construed to effectuate their remedial purpose. Friedman v.

Maspeth Federal Loan and Sav. Ass'n., 30 F. Supp. 3D 183, 187 (E.D.N.Y, 2014) ("The Act

[RESPA] was designed to throw the federal Judiciary's protective cloak over residential-occupant

owners of real property and their kin to protect against abuse by banks during loan closings and

subsequent related events. The Act should be broadly applied to accomplish its prophylactic

purposes by exercising federal subject matter Jurisdiction.").

8.   Plaintiff Izmirligil purchased his home on June 26, 2006 by executing note and mortgage

in favor of JP. Morgan Chase Bank, NA ("JPMCB") that is Fannie Mae/Freddie Mac "Uniform

Instrument" and "federally related mortgage loan" in the amount of $1.1 million. (**EXHIBIT-1**).

9.   Plaintiff Izmirligil is "borrower" within the meaning of RESPA, 12 U.S.C §2605, and his

loan is a "federally related mortgage loan", because it is secured by a first lien on residential real

property designed principally for the occupancy of one to four families, and was made in whole

by JPMCB, then the Bank of New York Mellon ("BONYM") as trustee for CMFT 2006-S2

series, acting as lenders that had deposits or accounts insured by the FDIC. 12 U.S.C §2602(1)

(A) and (1)(B)(i).

10. Defendant SPS has been servicing of the Plaintiff Izmirligil subject mortgage loan since

September 1, 2013, and SPS is a servicer as defined under RESPA 12 U.S.C §2601(i)(2).

(**EXHIBIT-2**)

11. On December 27, 2015, Plaintiff mailed SPS his "first" Qualified Written Request ("first

QWR") under RESPA that identified himself, subject loan number, and address of the subject

property, and further by inquiring informations in regard to the SPS' Lender Placed Insurance

4

Policy ("LPI") and accounting that are related to the SPS's servicing of the above referenced mortgage. (**EXHIBIT-3**).

12. SPS did not respond to the Plaintiff's request for information in regard to the SPS's LPI policy—instead, its attorney Dorothy A. Davis of Eckert Seamans, LLC sent a letter dated January 27, 2016 to the office of attorney David L. Singer who was not the attorney on the record, and was not representing the Plaintiff Izmirligil in the 2009 State Litigation, and further falsely stated that:

> "According to SPS's records, LPI was placed on the property, with a policy number of ALR 07556724339, effective November 1, 2013 to November 1, 2014 ("LPI Policy")...However, it appears your client subsequently obtained a retail policy on the property, and as a result, SPS terminated the LPI policy. Since **the termination of the LPI policy in July of 2014**, we understand no additional LPI has been placed on the property and currently the property is insured by Scottsdale Insurance Company, pursuant to the Policy Number HOS1207787, effective July 26, 2015 through July 26, 2016 ("Scottsdale Policy"). (**EXHIBIT-4**).

13. Contrary to the attorney Dorothy A. Davis's false statement concerning the date of the termination of the SPS's LPI policy which was July of 2014; The actual "Lender Placed Insurance Confirmation of Cancellation" with the Date of Issue; October 31, 2017, sent to Plaintiff Izmirligil by the American Security Insurance Company ("ASIC") which is the "insurer", and also co-defendant in the Plaintiff Izmirligil's "prior litigation" (**EXHIBIT-5**), where the District Judge Bianco denied the defendants' dismissal motions on September 7, 2018 (**EXHIBIT-6**), and this is the reason for the Plaintiff's "instant-subsequent action" which both actions will be consolidated pursuant to Local Rule 50.3.1(e)(2).

14. Defendant SPS clearly violated RESPA and its implemented Regulation-X related to its LPI policy—not just by fabricating a false LPI policy on the Plaintiff Izmirligil property, but also intentionally disregarding of the cancellation of its same false LPI policy in violation of 12

5

U.S.C §2605(k)(1)(A),(C),(E); 12 U.S.C §2605 (l),(2)(3)(A)(B); 12 C.F.R §1024.37(C)(1)(iii)

(2); 12 C.F.R §1024.37(e)(2)(vii)(g) which is clearly stated in the interim that:

> "Cancellation of force placed insurance; within 15 days of receiving...evidence
> demonstrating that borrower had in place hazard insurance....
>> 1. Cancel the force-placed insurance; and,
>> 2. Refund to such borrower all force-placed insurance premium charges and
>> related fees..."

15. The date of issue of the "Lender-Placed Insurance Confirmation of Cancellation" is

October 31, 2017 on its face which was issued after Plaintiff Izmirligil commenced his prior

litigation on October 18, 2017, and more than two (2) years—contrary to the false statement of

its attorney Dorothy A. Davis which the cancellation date was July 2014—and further ASIC's

October 31, 2017 cancellation letter clearly stated on its face that:
> "Dear Customer:
> The named insured Mortgage/Lender has requested cancellation of the vendor-placed
> insurance that was issued in compliance with your mortgage/lien agreement. This
> cancellation is effective at 12:01 am on 11/01/2013. The reason for this cancellation is:
> **Named Insured's (SPS, Inc) request.**"

It is abundantly clear that SPS has requested the cancellation of its false LPI policy, after Plaintiff

commenced his prior litigation against SPS, and further SPS's own "Financial Breakdown

Statement" clearly demonstrated the same on its face that the date of LPI refund is 11/02/2017,

which is the date after Plaintiff Izmirligil commenced his prior litigation on 10/18/2017, against

Defendant SPS, and other co-defendants ASIC, and Assurant, Inc ("Assurant"). (**EXHIBIT-7**).

16. Plaintiff Izmirligil has suffered "actual damages" that were directly and proximately

caused by the Defendant SPS's violation of RESPA, by charging false LPI policy in the amount

of $10,032.00 annually, on the Plaintiff's property, by failing to provide correct information in a

clear and conspicuous manner, by failing to correct its falsely charged LPI fees in its servicing

records (e.g escrow accounting and payment history records, etc.) timely, in a clear and

conspicuous manner under RESPA and its implemented Regulation-X, in which caused Plaintiff Izmirligil to incur further costs and attorney's fees in trying to seek more information to correct the Defendant SPS's false LPI policy, and further that as a result of the SPS's RESPA violations, Plaintiff Dr. Izmirligil suffered loss of income, nausea, emesis, embarrassment, and mental anguish.

17. The Defendant SPS's fabrication of false LPI policy in violation of RESPA, 12 U.S.C §2605(f)(1) is standard and routine way of operating that Plaintiff Izmirligil can easily obtain "Statutory damages", where Izmirligil is opted out class-member of a class action in the case, styled, "Juan Almanzar and Joselyn Evans, et al v. SPS, Inc et al, Case No: 14-CV-22586, (Judge Moreno) (U.S District Court, Southern District of Florida), where the class action was settled for $40.6 million in monetary relief to a 166,066 member settlement class, in addition to $4.15 million in attorney's fees and expenses, against Defendant SPS, and other co-defendants, on March 25, 2016. ("The first class action").

18. Furthermore, the Defendant SPS's pattern and practice of non-compliance with the requirements of Section 2605 was permanently restrained and enjoined from engaging in certain conducts, e.g concerning fabrication of false LPI policy, etc..., in the case, styled United States v. SPS, Inc., 2007 U.S Dist LEXIS 104230, at 9 (D. Mass Sept. 6, 2007), where the Defendant SPS was stipulated the Consent Order, and agreed to pay $40 million with U.S Government entities, that was entered against SPS where the Defendant SPS's serial RESPA violations—more than couple of hundred thousands, as per the Class actions and Court records—that clearly supports Plaintiff Izmirligil's RESPA claim for "statutory damages" against Defendant SPS. Settlement is available at www.ftc.gov/news-events/press-releases/2003/11/fairbanks-capital-settles-ftc-and-

HUD-charges.

19. On March 5, 2018, Plaintiff mailed SPS his "second" Qualified Written Request ("second QWR") under RESPA that identified himself, subject loan number, and address of the subject property, and further by inquiring informations in regard to the accounting, more specifically unapplied and/or misapplied payments between July 26, 2006 and October 31, 2006, and between April 1, 2009 and July 21, 2009, and further demanded information in regard to the Notice of Default(s) and correction that are related to the SPS's servicing of the above referenced mortgage. (**EXHIBIT-8**).

20. SPS's response dated March 20, 2018 to this request for information and correction under RESPA did not provide any of the requested information, or correction; Instead, it stated that :
"Due to the current litigation, SPS believes that it would be more appropriate to refrain from providing a detailed response to you at this time. We encourage you to continue working with our legal counsel to determine the available resolution options...and consider this matter closed." (**EXHIBIT-9**).

This is a violation of RESPA, 12 U.S.C §2605, based on the District Court's decision in Bivens v. SPS, Inc., No: 1: 15-cv-0760-ELR-JKL, 2017 WL 8181523, at 12 (N.D Ga. Dec. 18, 2017), report and recommendation adopted, No: 1: 15-cv-0760-ELR, 2018 WL 3688935 (N.D. Ga. March 27, 2018) where the Court held that the "defendant SPS's failure to respond to the Plaintiff Bivens' QWR under the guise of ongoing litigation is a violation of RESPA, 12 U.S.C §2605(e)", and further determined that "the existing or ongoing lawsuits and litigations do not operate as a stay to RESPA" in the above styled class-action lawsuit against Defendant Servicer SPS, Inc. On September 10, 2018, SPS stipulated and settled the class-action with Plaintiff Bivens. (**EXHIBIT-10**).

21. On March 25, 2018, Plaintiff mailed SPS his "third" Qualified Written Request ("Third

QWR") under RESPA, and under FDCPA, 15 U.S.C §1692c(a)(2) that also mailed to its attorney

Dorothy A. Davis, by requesting "Cease and Desist" communicating directly to the Plaintiff

Izmirligil who is represented with his attorney. (**EXHIBIT-11**).

22. SPS's response dated April 5, 2018 to this request, similarly failed to provide any of the

requested information, or correction, and/or comply with the Izmirligil's demand to Cease and

Desist communicating with the Plaintiff who is represented with an attorney; Instead, SPS sent

its response directly to the Plaintiff's Dental Office in violation of FDCPA, 15 U.S.C §1692c(a)

(2), and further stated that:

> "Due to the current litigation, SPS believes that it would be more appropriate to refrain
> from providing a detailed response to you at this time. We encourage you to continue
> working with our legal counsel to determine the available resolution options....and
> consider this matter closed." (**EXHIBIT-12**).

23. Plaintiff Izmirligil suffered "actual damages", additionally, that directly and proximately

caused by the Defendant SPS's additional violations of RESPA, by failing to provide correct

information in a clear and conspicuous manner, and by failing to correct its servicing errors (e.g

escrow accounting and payment history records, etc.) timely, under RESPA, and its implemented

Regulation X, in which caused Plaintiff Izmirligil to incur further costs, and attorney's fees in

trying to seek more information to correct the Defendant SPS's false servicing records, escrow

accounting, and payment history records that as a result of the SPS's RESPA violations, Plaintiff

Dr. Izmirligil suffered loss of income, nausea, emesis, embarrassment, and mental anguish,

where the District Court denied the servicer SPS's opposition to the RESPA claims of the

Plaintiff Bivens in Bivens v. SPS., Inc case.

24. On June 25, 2018, Plaintiff mailed SPS his "fourth" Qualified Written Request ("Fourth

QWR"), directly to the Relationship Manager Mr. Zachary Rogers and Mr. Sinanua Tuaitanu of

Servicer SPS, under RESPA due to the Defendant SPS's persistent failure to provide correct

informations and its failure to correct the servicing errors, and under RESPA's implemented

Regulation X that also rendered "Notice of Error" ("NOE"). (**EXHIBIT-13**).

25. SPS's response dated July 9, 2018 to this request, similarly, failed to provide any of the

requested information, or correction, and/or comply with the Izmirligil's demand that sent

directly to the Izmirligil's attorney Singer's office, stated similarly that:

> Legal matter.
> "The issue presented in the letters are part of an ongoing litigation. SPS is aware of the
> issues presented in the letter. Due to the current litigation, SPS believes that it would be
> more appropriate to refrain from providing a detailed response at this time...we encourage
> you to continue working with our legal counsel to determine the available resolution
> options...and consider this matter closed."
> Melissa J. Thomas
> Customer Advocate. (**EXHIBIT-14**).

26. Plaintiff Izmirligil suffered "actual damages", additionally that directly and proximately

caused by the defendant SPS's additional violations of RESPA, by failing to provide correct

information in a clear and conspicuous matter, and by failing to correct its servicing errors (e.g

escrow accounting and payment history record, etc., timely, under RESPA and its implemented

Regulation X, in which caused Plaintiff Izmirligil to incur further cost, and attorney's fees in

trying to seek more information to correct the Defendant SPS's false servicing records, escrow

accounting and payment history records that as a result of the SPS's RESPA violations, Plaintiff

Izmirligil suffered loss of income, nausea, emesis, embarrassment, and mental anguish, where

the District Court denied the servicer SPS's identical opposition to the RESPA claims of the

Plaintiff Bivens in Bivens v. SPS, Inc. case.

27. SPS sent another letter dated July 26, 2018 directly to the Izmirligil's attorney Singer's office, this time denying the Izmirligil's inquiry raised questions regarding "Escrow" accounting records, stated identically, in that:

> Escrow.
> "The issue presented in the letters are part of an ongoing litigation. SPS is aware of the issues presented in the letter and would like to work with you and your client to reach a resolution. Due to the current litigation, SPS believes that it would be more appropriate to refrain from providing a detailed response at this time...we encourage you to continue and your client to continue working with our legal counsel to determine the available resolution options...and consider this matter closed."
> Terra Henlime,
> Customer Advocate. (**EXHIBIT-15**).

28. On July 30, 2018, Izmirligil's attorney Singer sent his letter, under RESPA and Regulation-X as "final" Qualified Written Request ("QWR") and/or Notice of Error (NOE), directly to the Defendant SPS, Inc., and its current attorney(s) Dorothy Davis, Esq of Eckert Seamans Cherin & Mellott, inquiring the same information and corrections concerning the SPS's servicing errors (e.g escrow accounting and payment history records, and the default notices under note and mortgage agreements, etc...) (**EXHIBIT-16**).

29. On August 13, 2018, SPS sent its "final" letter directly to the Izmirligil's attorney Singer's office similarly denying the attorney Singer's inquiry raised "identical" questions regarding its false and defective servicing records by refusing to provide information and by refusing to correct its servicing errors, stating that:

> "Dear Mr. Singer,
> Thank you for your inquiry on July 31, 2018. The issues presented in your letter are part of an ongoing litigation. SPS is aware of the issues presented in your letter, and would like to work with you to reach a resolution. Due to the current litigation, SPS believes that it would be more appropriate to refrain from providing a detailed response to you at this time. Our legal counsel will respond under a separate cover."
> Sincerely,
> Jelisa Reed
> Customer Advocate. (**EXHIBIT-17**).

30. Neither the final letter of SPS nor its attorney's separate letter resolve the SPS's "additional violations" of RESPA and its implemented Regulation-X, in that Plaintiff Izmirligil suffered "additional actual damages" that directly and proximately caused by the SPS's failure to provide correct information in a clear and conspicuous matter, and by its failure to correct its servicing errors, timely, in which caused Plaintiff Izmirligil to incur further cost, and attorney's fees in trying to seek more information to correct the Defendant SPS's false servicing records, escrow accounting and payment history records that as a result of its RESPA/Regulation-X violations, Izmirligil suffered loss of his income and retirement funds, nausea, emesis, embarrassment, and mental anguish, where the District Court denied the Servicer SPS's identical opposition to the RESPA claims of the Plaintiff Bivens in Bivens v. SPS, Inc. case.

31. Furthermore, Izmirligil has signed a "Retainer Agreement" on August 7, 2018 with the class-action law firm of Giskan Solotaroff & Anderson, LLP, and has become a class-representative next to Mr. Bret A. Evans due to the persistent and chronic RESPA and FDCPA violations of the Defendant SPS, exactly committed by the same Defendant SPS, in this instant action; However, Izmirligil has withdrawn himself from the subject class-action [Evans v. SPS, Inc. et al, Case No: 18-cv-05985 (JMA)(GRB) E.D.N.Y], because the District Judge Bianco has denied the SPS's, and other co-defendant's motion to dismiss the Izmirligil's every claims on September 7, 2018, and further Hon. Bianco directed to the "Discovery/Deposition" proceedings in the previous case [Dr. Izmirligil v. SPS, Inc, et al, Case No: 17-cv-06157 (JFB) (AYS)E.D.N.Y], and additionally ordered that Izmirligil may amend his complaint, after Discovery/Deposition proceedings be completed, where Izmirligil has to file his instant "Supplemental Complaint" against SPS, Inc, under RESPA/Regulation-X and FDCPA, due to the

12

possible "Statute of Limitations" issue in respect to the SPS's RESPA violations within which is

three (3) years, and will be expired early January 2019. ("Second class-action") (**EXHIBIT-18**).

**B-  Defendant SPS is a "Serial FDCPA violator", and SPS was already permanently
restrained and enjoined from violating FDCPA based on U.S v. SPS, Inc. 2007 U.S
Dist. LEXIS 104230, at 9 (D. Mass., Sept. 6, 2007), in which is identical to the Plaintiff
Izmirligil's FDCPA claims in this instant action:**

32.  In addition to the current Class-action against SPS, Inc. in the US District Court,

E.D.N.Y (Evans v. SPS, Inc); Izmirligil's FDCPA claims are also identical against Defendant

SPS, in the other multiple class-action (and/or individual litigations), based on the

Defendant/Servicer SPS's exact same violations-either still ongoing or already settled by the

Defendant SPS- in the cases, as styled, Bacardi v. SPS, Inc. Case No: 16-cv23381,

(RNS)-,Southern District of Florida( Class Action for FDCPA and RESPA violation of SPS); as

styled Kahn v .SPS Inc Case No:17-cv-07540 (NSR)(PED) S.D.N.Y (Class-action for FDCPA

violation of SPS); as styled, Bailin v. SPS, Inc. Case No: 14-cv-00678 (GMN)(PAL), D. Nevada

(Individually for FDCPA violations of SPS); as styled, Wright v. SPS, Inc., Case No: 14-cv-

02298-I-30TGW, (M.D Florida) (Individually for FDCPA violation of SPS).

33. More specifically, servicer SPS's FDCPA violation against Plaintiff Izmirligil is the same

violation of the different case, as styled Carlin v. Davidson Fink, LLP, 852 F. 3d 207 (2d Cir.

2017) where Second Circuit affirmed the District Judge Seybert's order, confirming the exact

same violation of different Defendant, under FDCPA with respect to the falsified "Pay-off

letters" of the Defendant Debt Collectors.

34. Plaintiff Dr. Arif S. Izmirligil is an individual who resides in Miller Place, New York, in a

single family home which he owns, and at all times relevant, he has maintained, and currently

maintains his home as his primary, principal residence, residing  with his family (the "Home").

35. Plaintiff Izmirligil is a "consumer" as defined by 15 U.S.C §1692a(3), because, he is a natural person allegedly obligated to pay the loan (the "Loan") on his home.

36. The loan is a "Debt" within the meaning of 15 U.S.C §1692a(5) because it arouses from transactions in which the money was used for personal, family, or household purposes, Plaintiff Dr. Izmirligil incurred the loan to purchase his home.

37. Defendant Select Portfolio Servicing, Inc ("Defendant" or "SPS") is a Utah Corporation with its primary place of business at 3217 S. Decker Lake Dr., Salt Lake City, UT 94119-3815. It's registered agent and office is Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

38. SPS is engaged in the business of servicing residential mortgage loans for owners of the loans.

39. Many of the loans which SPS services are in default or allegedly in default when SPS first becomes involved with them. Typically, loans are treated as in default when 30 days behind.

40. This is a regular part of SPS' business activities. During 2012-2013, SPS assumed servicing of 120,000 defaulted loans with a principal balance of over $25 billion.

41. SPS holds itself out as a "special servicer", i.e, one which has expertise in handling defaulted loans for their owners and effectively integrating them onto its servicing platform. SPS obtains ratings as a "special servicer".

42. According to a press release of Fitch, "As of March 31, 2016, SPS primary serviced 409,247 loans totaling approximately $84 billion. The portfolio is broken down by rated products and includes the following: 373,363 subprime loans totaling $75.5 billion, 16,439 Alt-A loans totaling $7.1 billion; 14,313 closed-end second lien loans totaling $521 million and the special

servicing portfolio consisted of 31,782 loans totaling $4.5 billion"

(http://www.businesswire.com/news/home/201607250005921/en/fitch-affirms-select-portfolio-servicing-u.s-rmbs).

43. According to a press release of Moody's, as of March 2018, SPS's servicing Portfolio totaled $114 billion in unpaid principal balance. This reflects continued growth for the residential servicing portfolio compared to prior review.

44. SPS uses the mail and telephone system in conducting its business, and at all times relevant, defendant SPS communicated with Plaintiff's by using the mail and other instrumentalities of interstate commerce to collect or attempt to collect debts owed or due or asserted to be owed or due another.

45. SPS regularly and often represents the owners of mortgage notes such as the Note and regularly engages in collection through foreclosure of debts owed by consumers or communicates with mortgagors with respect to the servicing of residential mortgage loans.

46. Because it regularly collects defaulted debts for others, and the debts are in default or allegedly in default when it first becomes involved with them, SPS is a debt collector as defined by FDCPA 15 U.S.C §1692a(6).

47. Servicing of the Plaintiff Izmirligil's loan was transferred to SPS on November 1, 2013. Prior to that time, the loan had been serviced by JP. Morgan Chase Bank, NA ("JPMCB"). JPMCB was also the "originator" of the subject mortgage loan, "first servicer", and is currently the "Paying agent" of the Trust CMFT 2006-S2. JPMCB was also the "Assignor" of the servicing rights of the Izmirligil's loan to the "Assignee" SPS, Inc where SPS is in the shoes of the JPMCB, and further, SPS is responsible for all of the wrong doings of JPMCB, as former

15

servicer of the subject mortgage loan.

48. At the time that servicing of the Plaintiff's loan was transferred to SPS, the subject loan is alleged to have been in default or allegedly in default. SPS is what is colloquially referred to as a "Default Servicer", and SPS has a "Debt Collection Agency License No: 1170514" in New York City.

49. Defendant SPS has been attempting to enforce against Plaintiff Izmirligil's residential mortgage loan entered into for personal, family, or household purposes, namely housing.

50. The Izmirligil's loan was "allegedly" in default when SPS first became involved with on November 1, 2013, and the foreclosure action had been filed with respect to the loan in December 2009 that the loan had been accelerated. (**EXHIBIT-19**).

51. Each month during the last 12 months, including on or about May 1, 2018, defendant sent Izmirligil a monthly statement. (The one for May 1, 2018 is attached as **EXHIBIT-20**).

52. The monthly statements were printed or computer generated forms, filled out by a computer.

53. Each statement announces that "If payment is received after [date] $148.21 late fee will be charged."

54. A copy of the alleged Note and the mortgage of Izmirligil is in **EXHIBIT-1**.

55. The note provides for late charges on an "overdue payment of principal and interest" and says nothing about late charges after **acceleration**.

56. After a loan has been accelerated, there are no overdue payments of principal and interest.

57. Because the loan had been accelerated, no late fees were permissible (Carreras v.

Weinneb, 33 AD 3d 953, 955 826 N.Y.S 2d 72 (2d Dept. 2006); Greenpoint Sav. Bank v. Varona, 236 AD 2d 443, 653 NYS 2d 656 (2d Dept. 1997); Kahn v. SPS, Inc., Case No: 17-cv-07540, (NSR)(PED) (S.D.N.Y).

58. The alleged note and mortgage are written on standard forms. The language concerning "**late charges**" is standard in residential mortgage loans.

59. Defendant SPS has engaged in a pattern and practice of stating that "Late fees may be charged on accelerated loans; thus, Defendant SPS' statement is false and clearly violates the FDCPA, 15 U.S.C §1692(e) and (f).

60. Each monthly statement also reflects that SPS charges in the amount of $7,443.00 as styled "Other charges and fees" included in the amount to reinstate account is $1,146,902.81.

61. The defendant SPS' recent "Payoff Statement" dated May 1, 2018 similarly reflects that SPS charges in the amount of $7,443.00 as styled "**Loan Level Advance Balance**" included in the total amount due of $2,011,781.92 under the alleged note and mortgage agreements. A copy of the "Payoff Statement" dated May 1, 2018 sent to Plaintiff Izmirligil by Defendant SPS in the **EXHIBIT-21**.

62. In its letter dated April 23, 2018 signed by its attorney Kenneth J. Flickinger of Eckert Seamans, LLC., defendant SPS conceded that the "Corporate Advance Balance" of Izmirligil consist of the charges for the prior and current FC Attorney's fees in the amount of $5,750.00; the foreclosure cost in the amount of $1,463.00; the property inspection in the amount of $141.00; and the property validation in the amount of $89.00, totaling in the amount of $7,443.00 A copy of the letter dated April 23, 2018 is in the **EXHIBIT-22**.

63. Because the "Payoff Statement" and the "Monthly Statements" which stated an amount

of the debt, but also stated that "The Total Amount Due" are included in the Foreclosure

Attorney's fees, the foreclosure cost, the property inspection fees, and the property valuation fees

totaling in the amount of $7,743.00 which are not yet due as of the date of the Payoff Statement

and the Monthly Statement are issued; Thus, the payoff statements and the monthly statements of

the defendant SPS is not entitled under note, is improper and further it plainly violates the

Section 1692(e) and (f) of FDCPA (Carlin v. Davidson Fink, LLP., 852 F.3d 207 (2d Cir. 2017);

Veach v. Shecks, 316 F.3d 690, 693 (7th Cir. 2003)).

64. Furthermore, SPS communicated—directly—with Plaintiff Izmirligil, multiple times, in

connection with the Note, and with respect to such mortgage debt in violation of Section 1692(c)

of the FDCPA, without the prior consent of Izmirligil, where the debt collector SPS knew the

consumer Izmirligil is represented by his attorneys as per the Izmirligil's "first" Cease and Desist

letter dated November 4, 2013 sent to the servicer SPS, Inc., as per the Izmirligil's "second"

Cease and Desist letter dated April 4, 2018, sent to the servicer SPS, Inc; and, as per the

Izmirligil's attorney Singer's "third" Cease and Desist letter dated April 14, 2018 sent to the

Servicer SPS, Inc., by sending pay-off letters, collection letters, and statements directly to the

Izmirligil's dental office between January 2014 and August 2018; Despite, SPS has knowledge of

such attorneys' names, as per its own letter dated January 8, 2014, and/or SPS can readily

ascertain, such attorney's name and address where the Izmirligil's attorneys had never consented

to direct communication with Dr. Izmirligil. [The copy of the SPS's acknowledgment letter dated

January 8, 2014; the copy of the Izmirligil's "first", "second", and "third" Cease and Desist

letters (which were sent by the attorney Singer directly to the servicer SPS, dated April 14, 2018)

were annexed as **EXHIBIT-23** and **EXHIBIT-24**].

65. As a result of the Section 1692(c) of the FDCPA violations of the Servicer SPS, Plaintiff Izmirligil has suffered actual damages, for the additional attorney's fees and costs, and is entitled to statutory damage plus actual damages to be shown specifically at the time of trial, based on the servicer SPS's same violations in different cases, as styled, Bailin v. SPS, Inc Case No: 14-cv-00678 (GMN)(PAL)(D.Nevada) (August 7, 2015); and, as styled Wright v. SPS, Inc., Case No: 14-cv-2298-T-33TGW (M.D Fla. Feb. 2, 2015) (James S. Moody, J).

66. Contrary to the District Judge Bianco's September 7, 2018 Order by commanding that the Discovery and Deposition of "one" Deponent from SPS, Inc **shall** proceed, and despite to the Izmirligil's and his attorney's multiple inquiries through QWRs and NOEs under RESPA and its implemented Regulation-X; The Defendant Servicer SPS, through its current attorney Flickenger of the Law firm Eckert Seamans, filed a motion for a "Protective Order" in the State Court—shamelessly and deceitfully—where there is **no** Discovery or Deposition proceeding in the State action by hopelessly attempting to hide the servicers SPS's and JPMCB's own servicing records that will absolutely demonstrate the servicers' wrong doings, as per the direction of attorney Kramer who is the supervisor of the attorney Flickenger of Eckert Seamans, as stated in his "Law 360" article, that **"When all else fails, file a motion for a "Protective Order"**. (**EXHIBIT-25**).

## CAUSES OF ACTIONS
### FIRST CAUSE OF ACTION
### (AS TO SPS'S VIOLATION OF RESPA, 12 U.S.C §2605)

67.  Plaintiff repeats and realleges each proceeding paragraph of the Supplemental Complaint as if fully set forth herein.

68. SPS is a servicer because it is responsible for servicing Plaintiff's federally related

mortgage loan (12 U.S.C §2605(i)(3)); Because, it is secured by a first or subordinate lien on a

residential real property designed principally for the occupancy of one to four families, and was

made in whole by JPMCB, then the BONYM as trustee for CMFT 2006-S2 Trust Series, acting

as lenders that had deposits or accounts insured by the FDIC. (12 U.S.C §2602(1)(A) and (1)(B)

(i).

69. As a servicer of a federally related mortgage loan, SPS must comply with any regulation

implementing the provision of RESPA. (12 U.S.C §2605(k)(1)(E)).

70. SPS is required to maintain policies and procedures that are reasonably designed to

ensure that it can provide accurate and timely disclosures to a borrower as required by this

subpart or other applicable law and provide a borrower with accurate and timely information and

documents in response to the borrower's requests for information with respect to the servicing of

the borrower's mortgage loan. (12 C.F.R 1024.38(a),(b)(l)(i), and (b)(l)(iii)).

71. Between December 27, 2015 and July 30, 2018, Plaintiff Izmirligil and his attorney

Singer sent seven (7) QWR/NOE to the servicer SPS, requesting, among other things, that

Servicer SPS to provide Izmirligil servicing informations in regards to the SPS's illegally

fabricated Lender Placed Insurance ("LPI") policy, and its cancellation date within 15 days,

under RESPA (12 U.S.C §2605(1)(3)(A) and (B), and under Regulation-X (12 C.F.R §1024.35(b)

(5) and (6); to provide information concerning Izmirligil's Escrow and Payment account going

back to the inception thereof; and further, after investigation, to inform and/or to correct its

servicing errors in regard to the Izmirligil's disputed loan and as per the documents provided with

JPMCB and the BONYM that there are discrepancies between the payment history records of

SPS and Escrow accounting records of SPS, as described in the attorney Singer's QWR/NOE

dated July 30, 2018 (or in the Plaintiff Izmirligil's six (6) QWR/NOEs); further, to provide

explanation and information why the servicer did not accept payment from Izmirligil on or

around June 15, 2009, or after July 21, 2009, as per its own "Customer Communication

Worksheet" ("CCW") that clearly demonstrated that (i) Izmirligil had a surplus in the amount of

$1,646.30 on July 21, 2009; (ii) Izmirligil had a surplus in the amount of $11,152.84 on April 4,

2009 when the servicer declared Izmirligil was in default in payments on the same date; (iii) The

servicer has misapplied and/or never applied the Izmirligil's payments more than $50,000.00 as

of today, as is evident from its own Escrow and Payment History records; and, furthermore,

servicer SPS also failed to provide a first notice or filing required by applicable law for Judicial

foreclosure titled "30-day Default notice", under the Note and Mortgage agreement in addition to

"90-days Default Notice" pursuant to RPAPL §1304 and RPAPL §1303 notice, all of which are

clear violations of RESPA/Regulation-X (12 C.F.R 1024.38(b)(1)(e) which SPS falsely states on

its monthly statements that SPS has completed the first notice or filing required to start a

foreclosure.

72.  SPS violated 12 U.S.C §2605(k)(l)(E) when it failed to provide a response to Plaintiff's

seven (7) QWRs/NOE for information with accurate, clear, and conspicuous information

concerning his servicing of mortgage loan by the servicer SPS.

73.  SPS provided an untimely, inadequate, insufficient, and misleading explanation of why

the information and corrective action requested by Plaintiff Izmirligil was unavailable or could

not be obtained by the servicer SPS, instead falsely denying it, under the guise of ongoing

litigations where the District Judge Ross flatly rejected the same reasoning as meritless in Bivens

v. SPS case (12 U.S.C 2605(2)(A)(C)(i), and 12 C.F.R §1024.36(d)(1)(i)).

74. SPS violated RESPA 12 U.S.C §2605(e)(2) by failing to provide a substantive response to Plaintiff Izmirligil within 30 days, including failing to (1) Make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and/or payment discrepancies, misapplications (or none-applications of suspense accounts), and further transmit to the borrower a written notification of such correction; or (2) after conducting an investigation, provide the borrower with a written explanation or clarification that including (i) a statement of the reasons the servicer SPS believes the account is correct, and (ii) the contact information of a servicer employee or office that can provide assistance to Izmirligil.

75. SPS's violation of RESPA harmed Izmirligil in that incurred attorney's fee, court fees, costs in having to respond to SPS's reinstatement letters, pay-off letters, printing, copying, and postage fees, uncorrected late fees, unapplied or misapplied mortgage payments, business loss, loss of retirement funds, mental anguish, embarrassment, nausea, and emesis.

76. SPS's violation of RESPA harmed Plaintiff Izmirligil by depriving him of the statutory right to accurate, clear, and conspicuous information concerning his mortgage loan's servicing conducted by servicer SPS.

77. Upon information and belief, SPS persistently and routinely and/or intentionally fails to timely and adequately respond to QWR/NOEs from the borrowers, and fails to take corrective actions concerning its servicing errors, unlawful charges for LPI policies to Escrow accounts, and fails to take corrective actions for the unapplied and/or misapplied mortgage payments to the borrowers' accounts. Indeed, other residential mortgage borrowers have complained to the Consumer Financial Protection Bureau ("CFPB"), and elsewhere that servicer SPS corruptly, and intentionally fails to timely and adequately respond to QWRs and NOEs where Izmirligil is

22

entitled to actual damages , statutory damages under 12 U.S.C §2605(f), together with attorney fees, costs, and punitive damages that is 9 times the actual  damages, as a result of SPS's pattern and practice of violating RESPA/Regulation-X. See

https://getoutofdebt.org/104245/selectportfolio-servicing-inc-cfpb-complaint-4;

https://www.consumeraffairs.com/finance/selectportfolio.html?page=11;

https://www.bankrank.org/complaint/2734366

## SECOND CAUSE OF ACTION
## (AS TO SPS'S VIOLATION OF FDCPA §§1692e, 1692f, 1692c)

78. Plaintiff repeats and realleges each proceeding paragraph of the Supplemental Complaint as if fully set forth herein.

79. Plaintiff Izmirligil is a consumer as defined by 15 U.S.C §1692a(3) when he purchased his home in New York by mortgage.

80. SPS is a debt collector as defined by 15 U.S.C §1692a(6), and regularly collects defaulted debts, or allegedly defaulted debts for others, and the debts are in default and/or allegedly in default when SPS becomes involved with collections.

81. SPS engaged in communication with Plaintiff as defined by 15 U.S.C §1692a(2) when it sent its Pay-off letters dated March 13, 2018, and April 2, 2018, and April 10, 2018, and April 14, 2018, and April 17, 2018, and May 1, 2018, and June 5, 2018, and June 18, 2018, directly to the Plaintiff Dr. Izmirligil's Dental Office.

82. SPS violated 15 U.S.C §1692e when it made false, deceptive, and misleading representations about the character and amount that Izmirligil allegedly owed to pay-off or reinstate his loan to avoid foreclosure.

83. SPS violated 15 U.S.C §1692f when it charged fees not owed and note expressly

authorized by the agreement creating the debt.

84. SPS violated 15 U.S.C §1692c when it contacted Plaintiff Izmirligil directly in writing without the prior consent of Izmirligil when SPS knew Izmirligil was represented by his attorney(s) with respect to the subject alleged debt, and Izmirligil's attorney(s) had never failed to respond to the SPS's or its attorneys' communication, and Izmirligil's attorney had never consented to direct communication with Izmirligil; In the contrary, Izmirligil and his attorney(s) sent three (3) Cease and Desist letters, directly to the Servicer SPS.

85. As a result of the violations by Defendant SPS, Izmirligil has suffered actual damages, and is entitled to statutory damages plus punitive damages to be shown specifically at the time of trial.

## JURY DEMAND AND RESERVATION OF HIS RIGHT TO AMEND

86. Plaintiff is entitled to and respectfully demands a trial by Jury on all issues so triable.

87. Plaintiff reserves the right to amend his complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Izmirligil respectfully requests this Court to enter Judgment against Defendant SPS for all of the following:

a. That the Plaintiff's instant action be consolidated with the Plaintiff's earlier action, as styled Dr. Izmirligil v. SPS, Inc., et al, Case No: 17-cv-06157(JFB(AYS) in the same District Court, E.D.N.Y;

b. That Plaintiff Izmirligil be awarded actual damages, and compensatory damages for injuries suffered by Plaintiff for each of his claims;

c. That Plaintiff Izmirligil be awarded statutory and exemplary and/or punitive damages

24

where permitted.

d.  That Plaintiff be awarded costs and attorney's fees;

e.  That the Court enter a Judgment permanently enjoining SPS from charging, collecting,

enforcing, and/or attempting to enforce debt in violation of RESPA/Regulation-X and in

violation of FDCPA.

f.  That the Court enter a Judgment awarding any other Injunctive relief necessary to ensure

Defendant SPS's compliance with RESPA/Regulation-X and FDCPA;

g.  Such other relief as this Court may deem just and proper.

Dated: December 11, 2018
       Miller Place, New York

Respectfully submitted,

Dr. Arif S. Izmirligil,
Plaintiff, Pro se
15 Sailors Court
Miller Place, NY. 11764
(631) 928-7660
yesizm@aol.com

25